499 So.2d 704 (1986)
Lorena DOYLE, Plaintiff-Appellant,
v.
ST. PATRICK HOSPITAL, Defendant-Appellee.
No. 86-95.
Court of Appeal of Louisiana, Third Circuit.
December 10, 1986.
Rehearing Denied January 14, 1987.
Writ Denied March 20, 1987.
*705 George Barron, Orange, Tex., for plaintiff-appellant.
Stockwell and Assoc., Robert W. Clements, Lake Charles, for defendant-appellee.
Before GUIDRY, DOUCET and YELVERTON, JJ.
YELVERTON, Judge.
Plaintiff, Lorena Doyle, appeals a ruling maintaining an exception of prescription in a medical malpractice suit. Appellant filed suit against St. Patrick Hospital alleging that the death of her husband, Cecil Doyle, on May 24, 1981, was caused by the negligence of the defendant. St. Patrick Hospital filed an exception of liberative prescription of one year, and the trial court maintained the exception dismissing plaintiff's suit. We reverse.
The sole issue presented on appeal is whether the running of prescription was suspended under the provisions of Act 792 *706 of 1981 which amended La.R.S. 40:1299.41 dealing with medical malpractice.
The prescription facts are not disputed. Cecil Doyle died on May 24, 1981. He was survived by his wife, Lorena Doyle. On May 20, 1982, Mrs. Doyle filed a malpractice claim with the commissioner of insurance under the provisions of R.S. 40:1299.41, et seq. The complaint named St. Patrick Hospital as well as two doctors as defendants, alleging that the defendants were liable in solido. On May 25, 1982, the commissioner sent a letter to plaintiff's attorney advising plaintiff that the two doctors were qualified providers but that St. Patrick Hospital was not qualified under the Act at the time of the alleged malpractice. The letter was received on June 2, 1982. The present suit was filed on July 22, 1982, against the hospital only, more than one year after the alleged act of malpractice. The hospital filed a peremptory exception of prescription based on La.R.S. 9:5628, which provides that actions for medical malpractice prescribe in one year. The trial court maintained the exception and dismissed the suit.
Prescription began to run against the plaintiff on May 24, 1981, the date of discovery of the hospital's alleged malpractice. One year later, May 24, 1982, prescription had accrued, unless something happened in the meantime to suspend or interrupt the running of it. One thing happened during that year: on May 20, 1982, plaintiff filed a claim against both doctors and the hospital asking for a medical review.
The filing of this claim as a proceeding under the Medical Malpractice Act did not interrupt prescription against the hospital, an alleged solidary obligor which was not "qualified" under the Act. Juneau v. Hartford Ins. Co., 458 So.2d 1011 (La.App. 3rd Cir.1984), writ denied 462 So.2d 198 (La.1984). Also, the Medical Malpractice Act provisions in effect at the time of the alleged act of malpractice did not provide for any suspension of the running of prescription on acts of malpractice involving "non-qualified" health care providers. The Medical Malpractice Act was amended, however, in 1981, by Acts 791 and 792, which became effective on September 1, 1981, to add some provisions with respect to the suspension and the running of prescription of actions against a health care provider who has not qualified under the Malpractice Act. Act 791 provided a suspension period when a claim for review under the Act has been filed against that health care provider. Act 792 provided a different suspension period in the case of a health care provider who is answerable in solido with a qualified health care provider against whom a claim for review under the Malpractice Act has been filed.
The present suit was filed timely if either one of the suspension periods provided by the 1981 Acts was applicable. The determination of whether one of the Acts applies to this case depends entirely on whether it has retroactive effect. We find, for reasons which we will now explain, that Act 791 of 1981 does not apply to acts of malpractice which occurred before September 1, 1981, its effective date, but that Act 792 is retroactive as it applies to the present alleged act of malpractice, that the running of prescription was thereby suspended, and that the suit against St. Patrick Hospital was timely filed.
Act 791 of 1981 amended R.S. 40:1299.41(D) to read as follows:
"D. A health care provider who fails to qualify under this Part is not covered by the provisions of this Part and is subject to liability under the law without regard to the provisions of this Part. If a health care provider does not so qualify, the patient's remedy will not be affected by the terms and provisions of this Part, except as hereinafter provided with respect to the suspension and the running of prescription of actions against a health care provider who has not qualified under this Part when a claim has been filed against the health care provider for review under this Part."
The suspension and its duration as provided by Act 791 is found in R.S. 40:1299.47(A)(2)(a), as follows:

*707 "(2)(a) The filing of the request for a review of a claim shall suspend the time within which suit must be instituted ... in the case of a health care provider against whom a claim has been filed under the provisions of this Part, but who has not qualified under this Part, until sixty days following notification by certified mail to the claimant or his attorney by the commissioner that the health care provider is not covered by this Part."
Act 791 added the following language to R.S. 40:1299.41(F):
"The provisions of this Part that provide for the suspension and the running of prescription with respect to a health care provider who has not qualified under this Part, but against whom a claim has been filed under this Part, do not apply to any act of malpractice which occurred before September 1, 1981."
Because of the express language of Subsection (F) of R.S. 40:1299.41 quoted immediately above, the suspension period provided by Act 791 is not applicable to the present case because the act of malpractice occurred before September 1, 1981.
By Act 792 of 1981 the Legislature provided with respect to the suspension of the running of prescription against a health care provider who is answerable in solido with a health care provider who has qualified under the provisions of the Medical Malpractice Act. Act 792, like Act 791, became effective September 1, 1981. It added two new Subsections, (G) and (H), to R.S. 40:1299.41, and these two subsections are here quoted:
"G. Notwithstanding the provisions of Subsection D, the running of prescription against a health care provider who is answerable in solido with a qualified health care provider against whom a claim has been filed for review under this Part shall be suspended for a period of ninety days after a panel is formed under the provisions of this Part, provided a claim is made against the in solido obligor either under the provisions of this Part or in a court of law within the ninety day period. For the purpose of this Part the panel shall be deemed to be formed on the date that the third health care provider member of the panel is chosen."
"H. The provisions of this Part do not apply to any act of malpractice which occurred before September 1, 1975. The provisions of this Part that provide for the suspension of the running of prescription with respect to a health care provider who is answerable in solido with another health care provider apply to an act of malpractice which has been duly submitted for review prior to September 1, 1981 but in which the third health care provider panelist has not been selected. The provision for the suspension of the running of prescription does not apply to any act of malpractice which has not been duly submitted for review and which has prescribed on September 1, 1981."
Subsection (F) above, enacted by Act 791, applies only to a health care provider who is non-qualified but against whom a claim has been filed under the Malpractice Act. As to this health care provider, and as to any act of malpractice occurring on September 1, 1981, or thereafter, a suspension is provided for filing suit, a suspension which lasts for sixty days following notification of non-qualification.
On the other hand, Act 792 of 1981, the substance of which is now incorporated in the above Subsections (G) and (H) of R.S. 40:1299.41, extends the time for the exercise of the patient's remedy whenever the obligation is solidary. Whenever a claim for review is filed against a qualified health care provider, the running of prescription against any health care provider answerable in solido with him is suspended for ninety days after the panel is formed.
It is a well settled jurisprudential rule that procedural or remedial laws are given retroactive effect in the absence of language showing a contrary intention. Lott v. Haley, 370 So.2d 521 (La.1979). This rule is subject to an exception where its application would operate unconstitutionally to disturb vested rights. Id. Prescription *708 laws are remedial in nature and as such are generally accorded retroactive application. Id.
Act 792 of 1981 did not change the prescriptive period for the filing of actions for medical malpractice; that period was and remained one year under LSA-R.S. 9:5628. However, Act 792 provided for a suspension of the running of prescription under certain conditions, and in that sense and under those conditions the act provided for the lengthening of the prescriptive period for the filing of actions for medical malpractice. The rule of retroactive application applies as well to situations in which prescriptive periods are lengthened as it does where prescriptive periods are reduced. Achord v. City of Baton Rouge, 489 So.2d 1373 (La.App. 1st Cir.1986), writ denied 493 So.2d 641 (La.1986); Barfield v. Barfield, 483 So.2d 1085 (La.App. 2nd Cir. 1986).
Giving Act 792 retroactive application to acts of malpractice occurring before its effective date does not disturb any vested rights. Act 791 of 1981 expressly declares that its provisions do not apply to any act of malpractice which occurred before September 1, 1981. Act 792, on the other hand, specifically provides for a limited retroactivity. We conclude, therefore, based upon the above rules, that the remedial benefits of the suspension provided by Act 792 of 1981 apply to any act of malpractice occurring before September 1, 1981, limited only by the exceptions found in the last sentence of Subsection (H) quoted above.
Subsection (H) expressly makes the suspension apply to an act of malpractice which has been duly submitted for review prior to September 1, 1981, but in which the third health care provider panelist has not been selected. Also, it applies to any act of malpractice which has been duly submitted for review and was not prescribed on September 1, 1981.
An act of malpractice which was prescribed on September 1, 1981, and which had not been "duly submitted for review" before that time, cannot be saved from prescription by the ninety day suspension provided for in Subsection (H), obviously because as to it prescription has run. But an act of malpractice as to which prescription has not run on September 1, 1981, but which had been submitted for review before September 1, 1981, though a panel was not yet formed, enjoys the suspension. From these specific provisions we believe it is reasonable to fashion this rule: the suspension provided by Act 792 applies to any act of malpractice occurring before September 1, 1981, when (1) the claim is not prescribed on September 1, 1981, and (2) the claim is submitted for review before prescription runs.
In the present case the act of malpractice occurred on May 24, 1981. The plaintiff had claims against two doctors who were qualified under the act, and St. Patrick Hospital, which was not qualified, and they were alleged to be solidary obligors. The alleged act of malpractice was not prescribed on September 1, 1981; prescription would not run on the claim until May 24, 1982. A claim under the act was filed on May 20, 1982, against the two doctors and the hospital. The claim was thus submitted for review before prescription ran. The application of the suspension provision of Subsection (G) was triggered by the filing of the claim against the two doctors on May 20, 1982. That suspension of prescription would last until 90 days after the panel was formed. The panel was formed sometime after November 1, 1982. Meanwhile, on July 22, 1982, the present suit was filed against the hospital. The suit interrupted the running of prescription and the plea of prescription should have been overruled.
We recognize that our holding herein is inconsistent with certain language we used in Juneau v. Hartford Insurance Company, 458 So.2d 1011 (La.App. 3rd Cir.1984), a case with similar prescription facts, wherein we held that the suspension provisions of Act 792 of 1981 were not applicable. We now reject that holding. It was error. The result of that case was correct, however, as *709 we found that even if the 1981 amendments supplied by Act 792 should be deemed applicable, the period of suspension allowed would not have saved the claims from prescription, as prescription, in any event, ran before the suits were filed.
For the reasons assigned, the judgment dismissing the suit against St. Patrick Hospital is reversed and set aside; the exception of prescription is overruled; the matter is remanded to the district court for further proceedings. Defendant St. Patrick Hospital will pay the costs of this appeal.
REVERSED AND REMANDED.